Good morning, your honors. Carol Gaines on behalf of the people. Very good. Okay, both of you will have 15 minutes. Appellant, I'm sure you'll want time for rebuttal. You have to reserve from your 15 minutes whatever time you wish to use for your rebuttal. I'll reserve about five minutes, your honor. Okay, manage your time accordingly. Good morning, your honors. May it please the court, this morning I intend to focus on issue one and if I have time to briefly touch on the sentencing issues. A person accused of attempted first-degree murder is not guilty if he believes he's acting in self-defense. The jury in this case was asked if my client, Casey Guyton, had an actual belief in self-defense and they found he did. Applying the black letter law, my client's conviction for attempted first-degree murder should be reversed. Well, they answered that question with respect to the murder charge, right? With the second-degree murder charge, that's correct, your honor. Well, he was charged with first-degree murder and then they found him guilty second based on the imperfect self-defense. I stand corrected. You're right. The charge was first-degree. Right. So it wasn't asked with respect to the attempt murder charge. That's right. The instruction on attempt did not address imperfect self-defense. It only addressed perfect self-defense. Specifically, it was a attempt was defined as having intent to kill without lawful justification, but there was no specific reference to imperfect self-defense. The nail was proper, right? We don't believe that the jury instruction was proper. We're not challenging it on its own because the court is not limited by the instructions that were given below. We apply what the actual law was, even if the jury was not properly instructed. In this case, the law is settled. In order to commit the crime of attempted first-degree murder, the defendant must have the intent to unlawfully kill. As your honors know, it is perfectly lawful to act in self-defense, and so a person who attempts the killing with the actual belief in self-defense cannot be convicted of attempted first-degree murder. This is the case regardless of whether the belief is reasonable or unreasonable. In People v. Lopez, the Illinois Supreme Court found that a person acting with the mitigating circumstance of unreasonable self-defense lacked the intent to unlawfully kill. This holding was echoed in other Supreme Court cases and honored by the clear commission. The only question then is whether my client acted with an actual subjective belief in self-defense. The verdicts reflected that the jury made such a finding. The evidence of trial showed that my client got into a car. They made that finding with respect to the murder charge. They made that finding with respect to the murder charge. If you would please address, what was his position with respect to the attempted murder, that he was acting in self-defense? The position below was that he was acting in perfect self-defense, and if that wasn't the case, that he was acting in perfect, I'm sorry. With respect to the attempt murder charge, he was charged with attempted murder. They proffered an instruction on self-defense, correct? That's correct. And apparently the jury rejected that defense. That's right, Your Honor, because the jury wasn't, again, we're not raising a jury instruction because we believe we have a finding here, and the court in reviewing the sufficiency of the evidence has to defer to factual findings, and the verdict in this case was a factual finding that when my client shot at the van, he had an actual belief in self-defense, and the court in reviewing the sufficiency of the evidence must make all reasonable inferences in favor of the state, but is not allowed to make unreasonable inferences. Our position is that it would be unreasonable to believe that my client fired a gun at Mr. Silva with a different belief than the shots that were fired at Mr. Flores. Objectively, what factors were there that supported self-defense? Objectively, based on evidence at trial? He was behind the vehicle and he shot through what, the window or something, the rear window? That's right, Your Honor. Objectively, what was there out there that showed self-defense? My client's testimony that there's no question that there's no... His self-serving testimony, okay. His honest testimony that when he was having the argument with Mr. Flores and Mr. Salovar, that he saw Mr. Flores display a gun, and after the argument, Mr. Salovar said, this isn't over. My client went to park his car, and he saw the van coming back in the same direction. He said he saw, he testified that he saw Mr. Flores reach down for a gun, and he believed he was about to be fired on, and that's when he fired the shot, so that would be the evidence. He saw him reach down. He saw him reach down, that's right, Your Honor. There's no requirement, all that matters is that you perceive that you would be having some great bodily harm or murder, you don't actually, or death rather, you don't need to see the gun itself, and the jury clearly believed part of that testimony. They believed that he had an actual belief in self-defense, they just didn't believe that it was an objective belief, that the belief was in fact reasonable under the circumstances. But the fact that the finding is unreasonable turns first-degree murder into second-degree murder, but for attempt under People v. Lopez, it turns attempted first-degree murder into an acquittal, which is what we're asking for in this case. Specifically, the finding was that my client acted with a subjective belief when he was firing on the van, and there was no factual distinction, the state has pointed out no factual distinction between the bullet that killed Mr. Saldivar and the one that grazed Mr. Flores. The gun was fired under the exact same circumstances, and it would be unreasonable to parse out one belief for one of the victims in this case, and one belief for the other victim. Unless Your Honors have any more questions about Issue 1, I can turn to the sentencing issues. Three of our challenges turn on the discrepancy in the sentences, specifically that my client received twice the sentence for an attempted murder than he did for the completed murder. This, at a basic level, shocks the conscience. It's wrong to treat non-fatal shootings made under the same circumstances worse than fatal shootings. And although the Supreme Court in People v. Morgan addressed a similar argument as this, in that case there were no mitigating circumstances present. In this case, as I've argued, the jury recognized that there were mitigating circumstances. In addition, the sentences violate equal protection by taking two similarly situated shooters, both acting with an actual belief in self-defense and treating them differently. It is arbitrary to punish a person who leaves a surviving victim worse than, more harshly than a person who, in fact, is successful at killing. Is the thrust of your argument there really reliant on the mandatory 20-year add-on? Yes, Your Honor. With regard to Argument 3, it relies on the add-on and also the disparate good time treatment between the different offenses. With regard to the fourth argument, it's only regarding the add-on. So I've discussed very briefly the proportionate penalties challenge, the due process, the It's irrational to encourage people to complete a murder rather than to leave a survivor. The fourth issue has to do only with the add-on, which is that under People v. the Lawyer House, the Illinois Supreme Court found that firearm use by someone who commits second-degree murder cannot be deterred. In my case specifically, my client wouldn't know that he would be acting in unreasonable self-defense until the van pulled up a wall or he saw Mr. Flores reach down and fired. Unless Your Honors have any more questions, we would ask that you reverse my client's conviction for attempted first-degree murder. You have five minutes for rebuttal, sir.  Good morning, Your Honors. May it please the Court, again, my name is Carol Gaines and I represent the people of the state of Illinois. With respect to the first issue the defendant presents today, in presenting a sufficiency of the evidence argument, it is the people's position that we have met our burden of proving beyond a reasonable doubt that the defendant committed attempt first-degree murder, which is separate from his conviction for attempt for second-degree murder involving Adam Saldivar. When viewing the evidence in the light most favorable to the prosecution, any rational trier fact could offend the elements of attempt first-degree murder beyond a reasonable doubt. Now defendant, I think, is asking you to take that mitigating circumstance, which is not a mental state, from the second-degree murder conviction and impute that to the attempt first-degree murder conviction of Edna Flores. And the law does not provide for that. The attempt murder conviction, attempt murder provides, the state has to prove that the defendant took the initial step towards killing Edna Flores, that he had the intent to kill Edna Flores, and he wasn't justified in using the force that he used. The first-degree murder statute, with respect to what the jury had to find before they could get to second-degree, found the same thing. And the evidence supports the finding of guilt on the attempt first-degree murder. The evidence showed that the defendant and Adam Saldivar were involved in a car accident. They got out of the car. There were words exchanged. According to the State's witnesses, Edna Flores never got out of the car, never threatened the defendant, never had a gun on him, never displayed a gun at all. They argued about the fender bender. They got back in their cars, and the defendant left the area, went to his car, took his car away from the area, got a gun out of his car, and went back to the intersection because he believed that the evidence showed that Saldivar said he would be back. Saldivar drives around the block. While he's driving around the block, the defendant's with his gun standing next to a tree, sort of hidden a little bit. That car comes around the corner, and he shoots into the passenger side of the vehicle. He strikes the back of the seat with the bullet that's lodged that grazes Saldivar's, grazes Edna Flores' back, and he fires again, and that bullet shoots, enters Adam Saldivar at the back of his head, and kills him. At that point, Flores jumps out of the van, and he runs. The State's witnesses, David Johnson, saw the traffic altercation, never saw Edna Flores get out of the car. He saw the accidents, he returned, he saw the accidents, and he testified that there was, or I'm sorry, excuse me, David Johnson saw the altercation, heard them arguing, he testified that the passenger never got out and didn't have a gun. When the van returned, he saw the defendant standing next to the tree, and he saw him start shooting. Eric Smith saw the same thing, a little bit of a commotion with the altercation, the traffic violation, and he saw the defendant come away from that situation, get a gun, and what does he hear the defendant say? That MF-er is going to pay. And he goes back to that intersection with his gun, and he waits for that van to come, and he shoots into it. And that, the jury found, again, and with respect to Eric Smith, he never saw anyone in that van with anything in their hands, never doing anything, never making any motions towards the defendant, nothing. They are coming back around from that intersection to get out of there when the defendant opens fire into that van. The, Erdia Bassett was the nice lady, her car got hit, actually, by the victim's van, and she testifies, too. Nobody's yelling, nothing's going on. When Flores, when the car crashes, Flores gets out and he runs. He does not have a gun in his hand. Based on that evidence, and it wasn't until the defendant, the defendant is the only one with a self-serving testimony who puts a gun in Andrew Flores' hand. Based on that evidence, the jury could have, any rational trier fact, could have found the elements of attempt first-degree murder beyond a reasonable doubt, regardless, regardless of what they found with respect to the second-degree murder. The defendant is asking this Court to impute that element, it's not an element of defense, impute that mitigating circumstance to his conviction for attempt first-degree murder, and the law doesn't provide for that, nor do the instructions. If you look at how the jury was instructed, they were instructed on first-degree, on attempt first-degree murder, that that's what they had to find. Took a substantial step towards killing Flores, with the intent to kill Flores, and wasn't justified in using the force that he used. The argument, as I see it, boils down to basically singular conduct that resulted in the death of one person, that the jury found had a mitigating circumstance present, and those very same act or acts resulted in an attempt murder conviction. That's correct. Right. And resulting in dramatically disparate sentencing, he received a harsher sentence for the incomplete act than he got for the complete act. Much more serious, murder. So his argument is, how can that be? How can I receive net 30 years in jail, versus 9 years net for a murder, or a death? In response, I would argue that, first of all, the sentencing statutes with respect to first-degree murder, with respect to second-degree murder, really reflects a legislative grace that the legislature has given to defendants who kill, but there's a circumstance which allows them to be less culpable and receive a lesser sentence. And there's also the attempt murder statute, which under SHARP, you can have a 20-year, you can have an add-on, because you want to deter the use of firearms in committing dangerous first-degree murder in the attempt to do that. But his argument is, is that the same act, I get 8 years for killing, 9 years for killing somebody, net, and I get 30 years, 7 months, net, for not killing somebody. In fact, not only not killing them, arguably not even causing great bodily harm, I mean, by his version of life. I think, again, with respect to those statutes, I understand what his argument is, but while they are separate acts, I justify it by looking at the evidence, and looking at what the jury could find with respect to each of the offenses, I mean, the acts, he has different, not different mental states, because it's a mitigating circumstance, he gets, he almost gets, he gets a break on a second-degree murder because the jury finds a mitigating circumstance. But he can still have the intent to commit, even if it's... His argument is, does it make sense to get almost four times the penalty in prison for not killing someone as it does for killing someone. His argument is, that doesn't make sense. It violates due process. It's disproportionate. There's no rational basis to allow that. How do you answer that? With respect to the disproportionate argument, Your Honor, that would be a cross-comparison at looking at two different statutes and the penalties they carry, which is prohibited under People v. Sharp. I think you have to look at what he's charged with, the offenses he committed, the jury's findings with respect to that. I mean, there's an assumption that if he had died, the defendant raises in his brief, there's an assumption that had the victim died, had Edna Flores died, that he would have been convicted of second-degree murder. That's not necessarily the truth. Again... I think his argument is, I was convicted of second-degree murder. I got nine years net. I was convicted of attempt murder, and I got 30 years, seven months net. How does that compute? Again, the legislature... I can only say that the legislature has provided for those circumstances under which you can't look at the attempt first-degree murder with a mitigating circumstance attached to it. The law doesn't provide for that. I understand that his argument is in fact that it's disparate, but the legislature hasn't seen fit in that circumstance, and they say under Lopez. I mean, Lopez is a case that rejects that claim, that had I killed the person, I would have gotten a lesser sentence than if I didn't kill him. The legislature is entitled to make those determinations with respect to how penalties are assessed. And with respect to the charges in this case, and the way the defendant, based on the evidence, was convicted, and the sentences that go with that, I don't think that that was improper. Lopez was never reversed, was he? That's correct. Lopez was never reversed. And neither was Morgan or Sharp. Well, Morgan was reversed. Sharp wasn't reversed. Lopez was never reversed. No. Lopez is still deadlocked. Is there a case out there that we can bias our argument with? No. I mean, I'm a chicken. I'm not going to reverse the case unless there's a case out there. No. Lopez does not recognize the offense of attempt second-degree murder in the state of Illinois. So under Lopez, his conviction for attempt first-degree murder stands. And under Lopez, the sentence for that can be, I'm sorry, can be greater, can be based on that attempt first-degree murder conviction. I see my time is up. For the reasons here, the reasons with respect to the sentencing I've cited in my brief, the people would respectfully ask that you affirm this defendant's convictions and sentences. Thank you very much. Mr. Greger? If you need more than five, go right ahead. Okay. Thank you, Your Honor. Don't push it. I think, I hope to be brief. We'll see. Proceed, please. With regard to the first issue, if you're looking for a case, I would suggest Lopez itself, People v. Reagan, Williams, which was an appellate court case which reversed attempted second-degree murder conviction, indicating that if there is evidence of a mitigating circumstance and it would not normally be attempted first-degree murder, the result is an acquittal. The result isn't a conviction for attempted first-degree murder. Lopez itself says that the intent required for attempted first-degree murder is the intent to unlawfully kill. And if you act with a belief in self-defense, you're not intending to unlawfully kill. If you don't have intent, you don't have a crime. Now, I would point out that the state in oral argument, as in its brief, has not noted any factual distinction, anything that would indicate that my client's belief in self-defense changed throughout the shooting. It happened very quickly. There's no reason not to infer the fact that it did with regard to Mr. Saldivar. With regard, I just want to be clear, we are not asking for attempted second-degree murder to be recognized here. We, I'm not sure where that came from. We are asking for an acquittal. We agree with Lopez that there is no such offense as attempted second-degree murder. You're asking for an acquittal because the jury found he had an unreasonable belief in self-defense in this transaction, and therefore should have accepted the self-defense argument as it related to the attempt murder charge. Is that what you're saying? Somewhat. It was not in a position to accept the unreasonable, an argument about unreasonable self-defense because it wasn't instructed in that. That's why there's no inconsistent verdicts in this case. I think Your Honor put it right when you said you're wondering whether it was a single act or some closely related acts. And our position would be that it was a single act. He fired into the van, and nothing changed in his mind between when he fired one bullet and when he fired the other bullet. Were there two bullets, or how many? There was, I believe, five bullets. While they found, the casings were for, they found four casings and one fired bullet. It's possible, as Your Honors know, that casings can get kicked around, that sort of thing. Or cartridge cases, rather. Excuse me. With regard to the sentencing issues, we're not raising a cross-comparison test. We're relying on cases which, cruel cases under the Eighth Amendment, and mostly under the proportionate penalties, the analyses kind of come together as to whether something shocks the conscience. And you can look at other statutes. We've cited, I believe, Miller is the case, which also looked at other statutes, and the confluence of statutes in determining whether an offense shocks the conscience. Well, the court had no discretion in the 20-year add-on, is that correct? That's right, Your Honor. It had no discretion under the statutes. Trial counsel did challenge this issue, and the trial court could have found that they were unconstitutional and had to impose them. But yes, according to the statutes written, there was no, the trial court was handcuffed on that. Does Your Honors have any other questions? We'd ask that my client's conviction be reversed. Thank you. Thank you very much. Court will take the case under advisement.